ROBERT J. MANNING *vs*. MORTIMER B. ZUCKERMAN
& another.[1]

Suffolk.  September 16, 1982. — January 14, 1983.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Consumer Protection Act,* Availability of remedy, Employment.  *Contract,* Employment.

The remedial provisions of the Consumer Protection Act, G. L. c. 93A,
§ 11, were not available to a former employee in an action against his
former employer and its sole stockholder arising out of the alleged
wrongful termination of his employment. [10-15]

CIVIL ACTION commenced in the Superior Court Department on December 7, 1981.

A motion to dismiss was heard by *Zobel,* J., and was reported by him to the Appeals Court.  The Supreme Judicial Court granted a request for direct review.

*Gael Mahony (Michael S. Greco* with him) for the plaintiff.

*Joel A. Kozol* for the defendants.

LYNCH, J.  At issue in this case is the scope of the protection provided by G. L. c. 93A, § 11, which grants the benefits of G. L. c. 93A, commonly known as the Consumer Protection Act, to any person engaged in trade or commerce. The plaintiff commenced this action against his former employer and its sole stockholder alleging, inter alia, that the defendants committed unfair and deceptive acts in connection with an agreement terminating his employment.[2]

---

[1] The Atlantic Monthly Company.

[2] The plaintiff also seeks a declaratory judgment pursuant to G. L.
c. 231A, §§ 1, 5, concerning contractual rights and obligations of the parties, and damages from the defendants for breach of contract.  This count
is unaffected by the decision in this case.  The plaintiff does not rely on
any claim under § 9 of G. L. c. 93A.

The plaintiff, in count 2 of his complaint, seeks treble damages for this alleged misconduct, and an award of attorney's fees. The defendants moved under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), that count 2, which alleged a claim under G. L. c. 93A, § 11, be dismissed for failure to state a claim upon which relief could be granted. The judge allowed the defendants' motion and reported his decision to the Appeals Court, Mass. R. Civ. P. 64, 365 Mass. 831 (1974). This court granted the plaintiff's application for direct appellate review, G. L. c. 211A, § 10 (A). We now affirm.

In evaluating allowance of the motion to dismiss, we accept as true the factual allegations of the complaint. *Nader v. Citron,* 372 Mass. 96, 97-98 (1977). *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 690 (1975). We summarize these allegations: The plaintiff, Robert J. Manning, was employed by the defendant The Atlantic Monthly Company (company) as the editor of its magazine, The Atlantic Monthly (Atlantic), from 1966 to 1980. In 1980, the defendant Mortimer B. Zuckerman sought to purchase all the company's outstanding stock. Zuckerman assured the company's shareholders that Manning would remain as editor of the Atlantic with full editorial authority. The company and Manning signed an employment contract to that effect at the closing on April 30, 1980, at which time Zuckerman purchased all the outstanding stock of the company. Zuckerman personally guaranteed payment of certain "additional retirement benefits" in the plaintiff's contract if the contract were to be terminated for any reason other than for cause as defined therein.

Despite his earlier assurances, Zuckerman never intended to retain Manning as editor of the Atlantic. After obtaining control of the company, Zuckerman repeatedly interfered with Manning's editorial activities. On October 1, 1980, the company and Manning executed a new contract that terminated the April 30, 1980, contract "without recourse by any party thereto." Under the new contract, Manning received a leave of absence through May 31, 1981, but obli-

gated himself: (a) to "consult from time to time" during October, 1980, with the Atlantic's editorial staff concerning editorial policies, and (b) to honor "the usual obligation of a high-ranking employee not to do anything harmful to his employer." Under this agreement, Manning was to be treated as an employee for the purpose of pension plan benefits and health insurance coverage. However, unless the company and Manning mutually agreed "to extend his employment beyond May 31, 1981," all reciprocal obligations would cease except for certain extra retirement benefits. The most significant of these provided that, beginning November 1, 1981, the company would pay Manning an additional retirement benefit of $750 per month. Zuckerman signed the agreement for the company as its president. Zuckerman also personally guaranteed the payment of this "additional retirement benefit." When the first payment came due on November 1, 1981, both defendants refused to pay it, and Manning brought the present action.

As this court has frequently stated, § 11 of G. L. c. 93A was intended to refer to individuals acting in a business context in their dealings with other business persons and not to every commercial transaction whatsoever. *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978). *Nader* v. *Citron*, 372 Mass. 96, 97 (1977). *PMP Assocs.* v. *Globe Newspaper Co.*, 366 Mass. 593, 595 (1975). Section 11 provides "a private cause of action to a person who is engaged in business and who suffers a loss as a result of an unfair or deceptive act or practice by another person also engaged in business." *Nader* v. *Citron, supra.* At issue in this case is whether the Legislature intended to grant the protection of c. 93A, § 11, to a former employee against either his former employer or its sole stockholder in a dispute arising out of the employment relationship. Manning resists being characterized as an employee of the company who, as such, was under the direct supervision of Zuckerman, the president and owner of the company, at the times relevant to his § 11 claim. He argues that the October 1, 1980, contract constituted a "post-employment agreement" and thus, at the time the alleged

unfair or deceptive acts occurred, he was an independent consultant and not an employee of the company or of Zuckerman. The words of the agreement, when considered in the context surrounding its formation, reveal decisively that Manning was an employee of the company through May 31, 1981. Manning conceded as much in the introductory statement to his complaint which seeks a declaration "concerning the rights and obligations of the parties in a *contract of employment*" (emphasis added). By the terms of the October agreement, Manning's employment with the company was to terminate on May 31, 1981, unless the parties mutually agreed "*to extend his employment*" beyond that date (emphasis added). From this language it is clear that Manning continued as an employee until his leave of absence expired in May, 1981. Thus, if either defendant committed any unfair or deceptive acts, they necessarily occurred in the context of the parties' employment relationship, in the case of the company, or arose out of that relationship in the case of Zuckerman, and not in an arm's-length commercial transaction between distinct business entities.

Thus, at issue in this case is whether G. L. c. 93A, § 11, provides another remedy, in addition to any breach of contract claims that may exist, for unfair or deceptive acts or practices committed by an employer or the sole stockholder of an employer with respect to any employee. None of our decisions allowing relief under § 11 has involved such an employer-employee relationship,[3] which already is extensively regulated. Although not controlling on the issue before us, various recent decisions of this court extending greater rights than formerly to employees discharged without cause have not involved claims made under G. L. c. 93A. See *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659 (1981); *Richey* v. *American Auto. Ass'n,* 380 Mass. 835 (1980); *Fortune* v. *National Cash Register Co.*, 373 Mass. 96

---

[3] In one decision, involving claims under § 11, made by an employer against an employee, we held, without discussion, that c. 93A did not provide relief for wrongs committed in an employment relationship. *Second Boston Corp.* v. *Smith*, 377 Mass. 918 (1979).

(1977). Additionally, our society already protects an employee's right to bargain collectively with his employer over the terms and conditions of employment, National Labor Relations Act, 29 U.S.C. § 157 (1976) (originally enacted as Act of July 5, 1935, c. 372, 49 Stat. 449); G. L. c. 150A, § 3; and it requires that hirings and discharges will be performed without discrimination. G. L. c. 151B, § 4. In light of these comprehensive protections for employees and after ten years of existence of § 11, it would be somewhat surprising if we should now conclude that the Legislature intended that allegedly unlawful acts under G. L. c. 93A, § 2 (*a*), and § 11, also include matters arising from an employment relationship.

The Legislature originally enacted c. 93A to improve the commercial relationship between consumers and businessmen. By requiring proper disclosure of relevant information and proscribing unfair or deceptive acts or practices, the Legislature strove to encourage more equitable behavior in the marketplace. See *Commonwealth* v. *DeCotis,* 366 Mass. 234, 238 (1974). By the addition of § 11 by St. 1972, c. 614, § 2 (see *Nader* v. *Citron,* 372 Mass. 96, 96-97 [1977]) these protections were extended to persons engaged in trade or commerce in business transactions with other persons also engaged in trade or commerce. The development of the statute, therefore, suggests that the unfair or deceptive acts or practices prohibited are those that may arise in dealings between discrete, independent business entities, and not those that may occur within a single company.

We have previously stated that c. 93A "is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 693 (1975). However, broad as this protection is, we believe that the Legislature did not intend the statute to cover employment contract disputes between employers and the employees who work in the employer's organization, nor to disputes between members of that organization arising out of the employment relationship. Although the

statutory language is not without ambiguity, we interpret the reference in § 11 to unfair or deceptive acts committed by "another person who engages in any trade or commerce" to refer to marketplace transactions and not to claims arising from the ordinarily cooperative circumstances of the employment relationship between an employee and the organization of which he is a member. *Id.* at 695-697. Section 11 remedies are available "in the case of a businessman [who suffers a loss] as a result of the employment by *another businessman* of either an unfair or deceptive act or practice or of an unfair method of competition." *Id.* at 696-697 (emphasis added).

Moreover, employment agreements between an employee and the organization of which he is a member do not constitute "trade" or "commerce" as those terms are defined under § 1 (*b*) of c. 93A.[4] This statutory definition of trade or commerce includes the act of "offering for sale . . . any services." Manning contends that the sale of his "editorial services" falls within this definition. We conclude, however, that the services contemplated by this definition are those offered generally by a person for sale to the public in a business transaction, not those services sold by an employee to an employer within the same organization. See, e.g., *Dodd* v. *Commercial Union Ins. Co.,* 373 Mass. 72 (1977) (insurance services); *Nader* v. *Citron, supra* (booking agency services); *SDK Medical Computer Servs. Corp.* v. *Professional Operating Management Group, Inc.,* 371 Mass. 117 (1976) (computer data processing services). Similarly, although a magazine publishing company engages in trade or commerce, the hiring and firing of employees is not part of the company's commercial activities with regard to consumers, competitors, or other business persons. See *PMP Assocs.*

---

[4] Section 1 (*b*) of c. 93A, as amended by St. 1972, c. 123, states that: "'Trade' and 'commerce' shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of the Commonwealth."

v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). An employee and an employer are not engaged in trade or commerce with each other. As a result, disputes arising from an employment relationship between an employee and the organization that employs him, or between an employee and other members of that organization are not covered by the c. 93A remedies afforded in commercial transactions. Thus, although we grant that the company is engaged in trade or commerce, Manning was not engaged "in the conduct of trade or commerce" within the meaning of § 11, either in his employment relationship with the company or in his relationship with Zuckerman.

Nor are such employment decisions within the broad language of c. 93A, § 1 (*b*), under which "any trade or commerce directly or indirectly affecting the people of this Commonwealth" is included. By enacting this broad standard for coverage under c. 93A, the Legislature provided protection not only for specific individuals involved in a transaction, but also for the public as a whole. Through the imposition of penalties for specific unfair or deceptive acts or practices between particular individuals, the statute seeks to deter these practices and to reduce the general danger to the public arising from the potential for such unscrupulous behavior in the marketplace. See *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 627 (1978); *Dodd* v. *Commercial Union Ins. Co.*, *supra* at 80; *Slaney* v. *Westwood Auto, Inc.*, *supra* at 697-700; Rice, New Private Remedies for Consumers: The Amendment of Chapter 93A, 54 Mass. L. Q. 307, 317-318 (1969). Contract disputes between an employer and an employee, by contrast, are principally "private in nature" and do not occur in the ordinary "'conduct of any trade or commerce'" as contemplated by the statute. See *Begelfer* v. *Najarian*, 381 Mass. 177, 190 (1980); *Lantner* v. *Carson*, 374 Mass. 606, 607-608 (1978); *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 693 (1975).

In *Second Boston Corp.* v. *Smith*, 377 Mass. 918 (1979), we held that "[c]laims by an employer against his employee

for breach of duty as an employee are not within the scope of G. L. c. 93A" (citations omitted). For the reasons articulated above, we hold that the converse is also true. Disputes arising out of the employment relationship between an employer and an employee are not cognizable under c. 93A. The trial judge's order dismissing count 2 of the plaintiff's complaint is affirmed.

*So ordered.*